UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMAL A. MILLER,

Petitioner,

v. Case No. 3:23-cv-501-JEP-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

Respondent.

---

# **ORDER**

**THIS CAUSE** is before the Court on Petitioner's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("**Petition**," Doc. 1), Respondent's Response to the Petition (Doc. 7), and Petitioner's Reply (Doc. 11) thereto.[1] Upon review, no evidentiary proceedings are warranted in this Court.[2] For the reasons set forth below, the Petition is denied.

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document numbers and page numbers assigned by the Court's electronic docketing system.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the

## I. PROCEDURAL HISTORY

On March 3, 2017, the State of Florida filed an amended information in Duval County Circuit Court case number 2016-CF-8450,[3] charging Jamal Artherio Miller ("**Miller**") with: (1) count one – aggravated stalking between January 1 and 22, 2016 after a domestic violence injunction[4]; (2) count two – kidnapping on January 15, 2016; (3) count three – sexual battery on January 15, 2016; (4) count four – kidnapping with a weapon on January 22, 2016; (5) count five – aggravated battery on January 22, 2016; (6) count six – tampering with a witness, victim, or informant between January 21 and 22, 2016; and (7) count seven – tampering with a witness, victim, or informant on January 22, 2016. (Doc. 7-1).

---

petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The Court finds that "further factual development" is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

[3] The Court takes judicial notice of Petitioner's state court dockets. *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651–52 (11th Cir. 2020) (holding that a district court may take judicial notice of online state court docket sheets in ruling on a petition for writ of habeas corpus).

[4] The victim in the underlying state court case obtained a lifetime injunction against Miller following a domestic battery on January 15, 2015. (*See* Doc. 7-2 at 5). Miller was convicted for the January 15, 2015 incident, was released from prison around December 2015, and then committed another battery against the victim on January 15, 2016. (*See id.*).

On April 10, 2017,[5] Miller proceeded to a jury trial represented by private counsel Regina Wright ("**Ms. Wright**"). (Doc. 7-14). On the last day of trial, Miller fired Ms. Wright and requested to represent himself, which request the trial court granted after finding him competent to waive the right to counsel. (*Id.* at 844–57). On April 13, 2017, the jury found Miller not guilty on counts one, three, and seven; guilty as charged in counts two and five; and guilty of a lesser-included offense as charged in count four.[6] (Doc. 7-14 at 1137; Doc. 7-35 at 12, 24–26).

At Miller's request, Tricia Rover ("**Ms. Rover**") with the Public Defender's Office was appointed to represent him at the sentencing. (*See* Doc. 7-16 at 2). At Ms. Rover's request, on May 12, 2017, Dr. Stephen I. Bloomfield ("**Dr. Bloomfield**") evaluated Miller and opined he was incompetent to proceed. (*See* Doc. 7-16 at 2; Doc. 7-17 at 4; Doc. 7-28 at 18–22; Doc. 13-1). At the State's request, on June 13, 2017, Dr. William R. Meadows ("**Dr. Meadows**") evaluated Miller and similarly opined he was incompetent to proceed. (*See* Doc. 7-16 at 2; Doc. 7-17 at 4–5; Doc. 7-18 at 5–6). Based on these

[5] Previously, at his arraignment, Miller asserted the right to self-representation. (Doc. 7-3 at 8). The next day, the trial court found him competent to waive the right to counsel and allowed him to represent himself. (Doc. 7-4 at 5, 30). At his adversary preliminary hearing, Miller reaffirmed his desire to continue to represent himself with stand-by counsel from the Public Defender's Office. (Doc. 7-5 at 6–7, 71, 79–80; Doc. 7-6 at 5–9).

[6] Count six was previously dismissed after the State abandoned it. (Doc. 7-14 at 814–15).

doctors' reports, on July 6, 2017, the trial court found Miller incompetent to proceed and committed him to the Department of Children and Families for treatment. (Doc. 7-18 at 5–6). On October 3, 2017,[7] Dr. Heather Jaudzimas ("**Dr. Jaudzimas**") with the Florida State Hospital, where Miller was being treated, submitted a report opining that Miller's competency had been restored. (Doc. 13-2). On October 23, 2017, the trial court found Miller competent to proceed. (Doc. 7-20; Doc. 7-21 at 7).

On January 2, 2018, three days before the sentencing, Miller invoked the right to self-representation. (Doc. 7-22 at 6–8, 11–12, 19–22, 28–29). The trial court found him competent to waive the right to counsel and appointed Ms. Rover as stand-by counsel. (*Id.* at 29–30). Immediately, Miller moved for a nunc pro tunc competency determination as of the time of trial. (*Id.* at 30–31). The trial court took the motion under advisement and denied it on January 5, 2018. (Doc. 7-22 at 31; Doc. 7-23 at 8, 11–12, 14–18, 20). The same day, the trial court sentenced Miller as a Prison Releasee Reoffender to a mandatory term of life in prison without early release on count two, a consecutive term of life in prison on count four, and a term of fifteen years in prison on count five

[7] The report was dated September 28, 2017, but it was submitted to the trial court on October 3, 2017, and the court referred to it as the "October 3, 2017" report. (*See* Doc. 7-19; Doc. 7-21 at 7; Doc. 13-2).

to run consecutive to count two. (Doc. 7-23 at 25, 62–65; *see also* Doc. 7-35 at 15–20).

With the assistance of counsel, Miller appealed his convictions and sentences. Florida's First District Court of Appeal ("**First DCA**") per curiam affirmed without a written opinion on November 12, 2019, *see Miller v. State*, 290 So. 3d 456 (table) (Fla. 1st DCA 2019), denied rehearing on January 13, 2020, and issued the mandate on March 4, 2020. (Doc. 7-26). On December 4, 2019 (mailbox[8]), while still represented by counsel, Miller filed a pro se belated petition for rehearing, which he amended on January 9, 2020. (Docs. 7-28, 7-29). On February 25, 2020, the First DCA denied Miller's petitions, along with his other pro se motions, as unauthorized, untimely, and meritless. (Doc. 7-30).

On June 5, 2020 (mailbox), Miller filed a pro se petition alleging ineffective assistance of appellate counsel, which he amended on July 8, 2020. (Docs. 7-31, 7-32). On April 13, 2021, the First DCA per curiam denied the petition "on the merits" without a written opinion. (Doc. 7-33).

On October 18, 2021 (mailbox), Miller filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.800(a), which

[8] *See Houston v. Lack*, 487 U.S. 266, 270, 276 (1988) (concluding that under the mailbox rule, the filing date for pro se prisoners is the day when they deliver their notice of appeal or petition to "prison authorities for forwarding to the court clerk").

the trial court construed as a motion for correction of an illegal sentence and dismissed as meritless on October 28, 2021. (Doc. 7-34; Doc. 7-35 at 2–4).

On December 6, 2021 (mailbox), Miller filed another pro se motion under Florida Rule of Criminal Procedure 3.800(a), which the trial court denied on September 1, 2022. (Doc. 7-36 at 5–10, 19–20). The Fifth DCA per curiam affirmed the denial without a written opinion on February 21, 2023, *see Miller v. State*, 357 So. 3d 127 (table) (Fla. 5th DCA 2023), and issued the mandate on March 17, 2023. (Docs. 7-38, 7-40). On March 18, 2023 (mailbox), Miller timely filed the present Petition in this Court.[9] (Doc. 1 at 29).

## II. LEGAL STANDARD

### A. AEDPA

Pursuant to the Antiterrorism Effective Death Penalty Act ("**AEDPA**"), a federal court may not grant federal habeas relief with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[9] Respondent concedes, and this Court finds based on a review of the state court dockets, that this action is timely. (*See* Doc. 7 at 14).

28 U.S.C. § 2254(d). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The Eleventh Circuit Court of Appeals discussed the meaning of the clauses in *Parker v. Head*:

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

244 F.3d 831, 835 (11th Cir. 2001) (quoting *Williams*, 529 U.S. at 412–13). Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[10] *Id.* (quotation omitted).

---

[10] In considering the "unreasonable application inquiry," the Court must determine "whether the state court's application of clearly established federal law

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, the state court's "determination of a factual issue . . . shall be presumed correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Parker*, 244 F.3d at 835–36.

**B. Exhaustion and Procedural Default**

Before bringing a § 2254 habeas action in federal court, a state prisoner must exhaust all state court remedies that are available for challenging his conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To do so, he must "fairly present[ ]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust their claims, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established

---

was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *see also Bell v. Cone*, 535 U.S. 685, 697 n.4 (2002) (declining to consider evidence not presented to the state court in determining whether the state court's decision was contrary to federal law).

appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), thereby alerting the appropriate state court to "the federal nature of the claim[s]," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *see also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process").

A state prisoner's failure to properly exhaust available state remedies results in a procedural default, which raises a potential bar to federal habeas review. Under the doctrine of procedural default:

> [A] federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 747–48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g.*, *Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (internal citations modified).

"To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Once cause is established, "the

petitioner also must show actual prejudice from the alleged constitutional violation." *Id.* (citing *Sykes*, 433 U.S. at 84). "[I]n order to show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Id.* (quoting *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992)).

In the absence of a showing of cause and prejudice, a petitioner may still receive consideration on the merits of a procedurally defaulted claim if he can show that a fundamental miscarriage of justice would occur:

> "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Carrier*, 477 U.S. at 496. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson*, 256 F.3d at 1171 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

### C. Ineffective Assistance of Trial and Appellate Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687–88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689–90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As the Eleventh Circuit has observed:

> [The test for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

The two-part *Strickland* standard also governs claims of ineffective assistance of appellate counsel. *Overstreet v. Warden*, 811 F.3d 1283, 1287 (11th Cir. 2016). When considering deficient performance by appellate counsel, "a court must presume counsel's performance was 'within the wide range of reasonable professional assistance.'" *Id.* (internal citation omitted). To that end:

> Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. *See Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *see also Burger v. Kemp*, 483 U.S. 776, 784 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

*Id.*; *see also Owen v. Sec'y, Dep't of Corr.*, 568 F.3d 894, 915 (11th Cir. 2009) (stating that "failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel").

To satisfy the prejudice prong of an ineffective assistance of appellate counsel claim, a petitioner must show a reasonable probability that "but for

the deficient performance, the outcome of the appeal would have been different." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004); *see also Philmore*, 575 F.3d at 1264–65 (stating that prejudice results only if "the neglected claim would have a reasonable probability of success on appeal"). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal citations and quotation marks omitted). "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (internal citations omitted). Thus, "[a]ppellate counsel might fail to identify a mediocre or obscure basis for reversal without being ineffective under *Strickland*." *Overstreet*, 811 F.3d at 1287 (citation omitted).

For ineffective assistance claims as to both trial and appellate counsel, there is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Because both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)). As *Strickland* stated: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation omitted). If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105. As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't of Corr.*, 703 F.3d 1316, 1333–35 (11th Cir. 2013) (Jordan, J., concurring); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III. DISCUSSION

### A. Ground One

In Ground One, Miller alleges that when the trial court adjudicated him competent to proceed on October 23, 2017, it erroneously dispensed with a competency hearing based on counsel's stipulation to waive the hearing, even

though Miller did not agree to the waiver either orally or in writing. (Doc. 1 at 5; *see also* Doc. 11 at 7–15[11]).

Miller presented a similar claim in his December 6, 2021, Rule 3.800(a) motion, which the trial court denied without elaboration on September 1, 2022, and the Fifth DCA per curiam affirmed without a written opinion on February 21, 2023. (*See* Doc. 7-36 at 5–10, 19–20; Doc. 7-40). Because the Fifth DCA affirmed without a written opinion, the Court presumes the affirmance was based on the trial court's findings. *Wilson v. Sellers*, 584 U.S. 122, 125–26 (2018). To the extent the trial court denied Miller's Rule 3.800(a) motion as procedurally barred, Miller did not properly exhaust his claim, and the claim would be procedurally defaulted. *See Coleman*, 501 U.S. at 734–35 & n.1 (stating that federal habeas courts will consider a claim to be procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default). Moreover, Miller has failed to show either cause and prejudice, or any factor warranting the

[11] To the extent Miller attempts to raise new claims in his Reply as to any of the alleged grounds, such claims are not properly before the Court. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (collecting cases); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief").

application of the fundamental miscarriage of justice exception to overcome the procedural default. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

Nevertheless, as Respondent concedes, Miller exhausted this claim by presenting it in ground four of his pro se amended petition, albeit as a claim for ineffective assistance of appellate counsel. (*See* Doc. 7-32 at 25–29 (alleging that "appellate counsel rendered ineffective assistance for failing to raise that the trial court fundamentally erred by improperly deciding [Miller's] competency, by allowing [Miller] to make a stipulation to his own competency, based solely on [Department of Children and Families] facility report that [Miller] had regained competency")). The First DCA denied the claim "on the merits" without a written opinion. (Doc. 7-33). Because the First DCA decided the claim on the merits, the Court addresses it in accordance with the deferential standard for federal court review of state court adjudications.

"Generally, a proper hearing to determine whether competency has been restored after a period of incompetence requires 'the calling of court-appointed expert witnesses designated under Florida Rule of Criminal Procedure 3.211, a determination of competence to proceed, and the entry of an order finding competence.'" *Dougherty v. State*, 149 So. 3d 672, 677 (Fla. 2014) (citations omitted). However, the plain language of Florida Rule of Criminal Procedure 3.212(a) "does not require the calling of expert witnesses or any additional witnesses." *Id.* Further, "where the parties and the judge agree, the trial [c]ourt

may decide the issue of competency on the basis of the written reports alone." *Id.* at 678 (quotation marks omitted) (citing *Fowler v. State*, 255 So. 2d 513, 515 (Fla. 1971) ("We concur that where the parties and the judge agree, the trial [c]ourt may decide the issue of competency on the basis of the written reports alone. But where . . . there are reasonable grounds to believe defendant [is] insane, [a]nd defense counsel requests a hearing, it is error not to provide such a hearing."); *Jones v. State*, 125 So. 3d 982, 984 (Fla. 4th DCA 2013) (holding that the trial court held a proper competency hearing where "the parties stipulated to the expert reports," the "reports became the evidence on which the trial court relied to decide the ultimate issue," "nothing in the record suggests that either side was prohibited from presenting any other evidence or arguments, and the trial court entered a written order concluding [defendant] was competent to proceed")).

Here, the parties stipulated to Dr. Jaudzimas's report, and her report became the evidence on which the trial court relied in determining Miller's competency on October 23, 2017. (Doc. 7-19; Doc. 7-21 at 6–7; Doc. 13-2). The same day, the trial court entered a written order memorializing the court's finding that Miller was competent to proceed. (*See* Doc. 7-20 ("Order Adjudging Defendant Mentally Competent")). Miller does not argue that either party was prohibited from presenting evidence or argument on the issue of competency before the court reached its decision. (*See* Doc. 7-21). Therefore, based on the

foregoing, including the agreement between the parties and the judge, the trial court reasonably determined Miller's competency based on the written report and without eliciting further expert testimony. *See Dougherty*, 149 So. 3d at 677–78; *Fowler*, 255 So. 2d at 515; *Jones*, 125 So. 3d at 984. To the extent Miller argues that counsel's waiver of a competency hearing was invalid because he did not personally approve it, counsel was not required to obtain Miller's waiver on the record before acting on his behalf. *See McArthur v. State,* 303 So. 2d 359, 360 (Fla. 3d DCA 1974) ("We cannot accept the [defendant's] argument that because the continuance was obtained without his knowledge, consent or approval, it would not operate as an effective waiver. The acts of an attorney [ '. . . ] will be binding on the client even though done without consulting him and even against his wishes.'").

Therefore, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Miller's claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Accordingly, Ground One is denied.

**B. Ground Two**

In Ground Two, Miller alleges his appellate counsel was ineffective for failing to challenge the trial court's failure to reoffer counsel at several critical

stages, all of which occurred on the last day of trial. (Doc. 1 at 7; *see also* Doc. 11 at 15–23). These stages include: (1) Miller's decision to remove his mother from the witness list (Doc. 7-14 at 864–65); (2) the questioning of the victim, defense witness Jumecia White, and Miller during the defense case (*id.* at 866–915, 933–87); and (3) Miller's closing arguments and sitting through the charge conference and the jury's deliberations (*id.* at 1061–83, 1107–34). (Doc. 1 at 7).

Miller presented this claim in ground three of his pro se amended petition alleging ineffective assistance of appellate counsel, which the First DCA denied "on the merits" without a written opinion. (*See* Doc. 7-32 at 21–24; Doc. 7-33). The First DCA's adjudication of the claim is entitled to AEDPA deference. Further, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issue or issues to raise on appeal. The danger of raising weaker issues in a "kitchen-sink" approach is that it detracts from the attention an appellate court can devote to the stronger issues and reduces appellate counsel's credibility. *See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989); *see also McBride v. Sharpe*, 25 F.3d 962, 973 (11th Cir. 1994). Thus, effective appellate attorneys "will weed out weaker arguments, even though they may have merit." *Philmore*, 575 F.3d at 1264; *see also Overstreet*, 811 F.3d at 1287. Appellate counsel's failure to raise a meritless or weaker issue does not constitute deficient performance. *See Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing *Jones v. Barnes*, 463 U.S.

745, 754 (1983)); *Owen*, 568 F.3d at 915. Prejudice results only if "the neglected claim would have a reasonable probability of success on appeal." *Philmore*, 575 F.3d at 1264–65.

The trial court was not required to reoffer counsel at each step that Miller has identified, considering that all of these steps occurred on the same day, and the trial court had already engaged in a *Faretta*[12] inquiry earlier that day when it allowed Miller to represent himself (Doc. 7-14 at 844–61). *See Brown v. State*, 113 So. 3d 134, 142–43 (Fla. 1st DCA 2013) (stating that although "[a] trial can be separated into many 'stages,' including jury selection, opening statements, the presentation of evidence, closing argument, jury instructions, the verdict, and certain post-trial motions," there is no constitutional requirement for "a renewed *Faretta* inquiry at the start of each and every component part of the trial"; and finding "it was sufficient under *Faretta* for the court to proceed on the second and third days of the trial without renewing the full *Faretta* inquiry at the beginning of each day"); *see also Knight v. State*, 770 So. 2d 663, 669 (Fla. 2000) (concluding that "the trial court was not required to offer counsel during the same stage of the proceeding where Knight waived his right to counsel, the trial portion"). Further, because the

[12] *Faretta v. California*, 422 U.S. 806, 835–36 (1975) (holding that the accused may represent himself and relinquish his Sixth Amendment right to counsel only upon a knowing, intelligent, and voluntary waiver).

trial court was not required to reoffer counsel as Miller argues, his appellate counsel cannot be ineffective for failing to bring this issue on appeal. *See Owen*, 568 F.3d at 915 (stating that "failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel"); *King v. Dugger,* 555 So. 2d 355, 357–58 (Fla. 1990) (citing *Suarez v. Dugger,* 527 So. 2d 190, 193 (Fla. 1988)) (same).

Therefore, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Miller's claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Thus, Ground Two is denied.

**C. Ground Three**

In Ground Three, Miller alleges the trial court erred by denying his motion for nunc pro tunc competency determination. (Doc. 1 at 8; Doc. 11 at 23–28). Three days before the sentencing, Miller filed his pro se motion for nunc pro tunc competency determination as of the time of trial. (Doc. 7-22 at 29–31). The trial court took the motion under advisement and explained it would be difficult to bring the experts (Dr. Bloomfield and Dr. Meadows) and Miller's trial counsel (Ms. Wright) to testify before the court in three days—on January 5, 2018—because they were not under a subpoena. (*Id.* at 31–39). On

January 5, 2018, Miller moved to continue the nunc pro tunc hearing so he could subpoena the experts, arguing that without their testimony, he would be prejudiced and his due process rights would be violated. (Doc. 7-23 at 7–9). The trial court denied Miller's request for a continuance, permitted Ms. Wright to testify telephonically, and denied Miller's pro se motion for nunc pro tunc competency determination. (*Id.* at 8, 11–12, 14–18, 20).

Miller presented this claim in his counseled amended initial brief on direct appeal, which the First DCA per curiam affirmed without a written opinion. (*See* Docs. 7-24, 7-26). To the extent the state court adjudicated the claim on the merits, the state court's adjudication is entitled to AEDPA deference. *See Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1255–56 (11th Cir. 2002) ("In § 2254(d) Congress meant to, and did, mandate deference to state court adjudications on the merits of federal constitutional issues, and a decision that does not rest on procedural grounds alone is an adjudication on the merits regardless of the form in which it is expressed."). Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Miller's claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Notably, the state court's factual determinations are presumed correct, unless rebutted by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker*, 244 F.3d at 835–36. Miller has not shown the state court's factual determinations were unreasonable.

Even assuming the state court's adjudication were not entitled to deference, Miller's claim still fails. The standard for mental competency to stand trial asks whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." *Card v. Singletary*, 981 F.2d 481, 487–88 (11th Cir. 1992). "[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental [in]competence to stand trial." *Medina v. Singletary*, 59 F.2d 1095, 1107 (11th Cir. 1995). When an inquiry into the defendant's competence to stand trial has not been requested, the standard for determining whether the trial court violated the Due Process Clause by failing to conduct that inquiry "is whether the objective facts known to the trial court at the time create a bona fide doubt as to mental competency." *Wright*, 278 F.3d at 1256 (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975); *Pate v. Robinson*, 383 U.S. 375, 385 (1966)).

Here, as explained in the State's answer brief:

> At no time prior to or during [the] trial did [Miller] or any defense attorney raise the possibility that [Miller] was incompetent. The trial judge had repeated, frequent conversations with [Miller] because [Miller] went pro se for part of the proceedings. The [j]udge was told by [Miller] in October of 2016 during the first *Faretta* hearing that he has been previously found incompetent and hospitalized.
>
> Throughout portions of the proceedings, [Miller] represented himself, including at the adversarial preliminary hearing. [Miller] was represented at different times by an attorney from the Public Defender's Office and by private counsel. [Miller] went to trial in April of 2017. During [the] trial, [Miller] was initially represented by private counsel, who [Miller] requested to fire and proceed pro se after the State rested. During the *Faretta* inquiry, the judge again inquired about competency and [Miller's] mental health history. At the time [Miller] requested to go pro se, neither his defense counsel, nor the State, nor the judge expressed concerns about his competence. The judge allowed [Miller] to proceed pro se, and [Miller] presented the defense case.
>
> [Miller] re-called the victim as a witness. He properly and repeatedly impeached her with deposition testimony and statements the victim made to police. [Miller] elucidated his theory of defense to the court. [Miller] presented an additional witness, testified to the court himself, engaged in a charge conference about the proposed jury instructions, argued the second motion for judgment of acquittal, and made closing argument. [Miller] was ultimately acquitted of a count of stalking, sexual battery, and tampering, but was convicted of two counts of kidnapping and one count of aggravated battery.
>
> After [the] trial, [Miller] was again represented by the public defender, who raised the issue of competency. [Miller] was evaluated, found incompetent, sent to the State hospital, and was deemed restored to competency on October 23, 2017. On January 2, 2018, [Miller] again asked to represent himself and after a *Faretta* inquiry was allowed to do so. [Miller] immediately filed a "Motion for Nunc Pro Tunc Competency Evaluation," challenging

> his competency during the trial. The judge held a hearing on the motion, during which [Miller's] trial lawyer briefly testified. (R-1121).

(Doc. 7-25 at 7–8 (record citations omitted); *see also* Docs. 7-3, 7-4, 7-5, 7-6, 7-16, 7-17, 7-18, 7-19, 7-20, 7-21, 7-22, 7-23; Doc. 7-14 at 844–1057, 1061–83, 1137).

Miller's trial counsel, Ms. Wright, responded to Miller's questioning at the nunc pro tunc motion hearing, as follows:

> Q Do you remember me saying that you was [sic] working with the state attorney and with the judge to obtain a conviction?
>
> A Yes, Mr. Miller.
>
> Q Do you remember you telling me that I was acting very paranoid and to calm down?
>
> A To [sic] very what?
>
> Q Very paranoid during the trial and to calm down.
>
> A Yes. Well, let me say this[,] Mr. Miller. Well, I guess throughout the time that I was representing you, I had to, I guess, prove that I wasn't working with the State, somehow helping them. So in that sense you were a difficult client because you had to -- I had to constantly reassure you that I was there for your best interest.
>
> Q Do you remember me turning -- spinning around in my chair and keeping my back turned towards you because I thought that you were on their side?
>
> A Yes. Well, I can't remember if that was the behavior, but I do remember throughout the trial there were times when you were just very difficult to deal with and you -- you know, I remember the

> night before you dismissed me from your case. I was at the jail for I think [sic] about midnight, somewhere around there, and you know, you had expressed some thought that I was going through with the State and I thought we had cleared up those matters and I had to reassure you that I didn't.
>
> But yeah, throughout the trial[,] you -- I guess whenever I did not do something that you thought I should have done, that was your response.
>
> Q And do you remember me saying that you are a maze along with the judge and the prosecutor[,] and you guys -- I caught you winking at the Judge, and things of that nature?
>
> A I don't know about the winking part. I mean, I don't remember that, but I know you did say that I was in cahoots with the State and the Judge to help you [sic] get a conviction.
>
> Q And do you think this is something that a competent person would do if they was [sic] competent[:] in the middle of a trial to fire an attorney that -- you know, that a private attorney in [sic] which they had to pay for with their own money, just throw money down the drain? I mean, I was serious about -- wouldn't you think I was serious about my allegations of you working with the State to aid the State to get a conviction?
>
> THE COURT: Hold on[,] Ms. Wright.
>
> Mr. Miller, that actually calls for a legal conclusion, so I'm not [going to] let you ask that question.
> . . .
>
> THE DEFENDANT: . . . [T]hat's really all I need to ask at this time.

(Doc. 7-23 at 16–18). After this questioning, Miller argued that because he "was found incompetent after [the] trial[,] then certainly [he] had to be incompetent during the trial." (*Id.* at 20). The trial court denied his motion. (*Id.* at 19–20).

The facts of this case, including Ms. Wright's testimony at the nunc pro tunc hearing, "were not sufficient to raise a bona fide doubt as to whether [Miller], at the time of [his] trial," had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," and as to "whether he ha[d] a rational as well as factual understanding of the proceedings against him." *Wright*, 278 F.3d at 1257 (citing *Dusky*, 362 U.S. at 402). Indeed, Ms. Wright's testimony points "to no behavior or beliefs that indicate [Miller had] an insufficient ability to communicate with her, or an irrational understanding of the proceedings," nor did she "express[ ] a belief that [Miller] was incompetent." (Doc. 7-25 at 15).

While Miller's incompetence before and after the trial may be relevant, it is not enough to counter the best evidence of his mental condition at the time of the trial. *Wright*, 278 F.3d at 1259. The best evidence is "the evidence of his behavior around that time, especially the evidence of how he related to and communicated with others then." *Id.* As the State points out, Miller's "performance during the trial demonstrate[d] a full grasp on the proceedings, an understanding of his defense, and an ability to cogently present his case." (Doc. 7-25 at 17). Based on the foregoing, the state court's denial of Miller's nunc pro tunc motion was not objectively unreasonable. *Wright*, 278 F.3d at 1256. Therefore, Ground Three is denied.

### D. Ground Four

In Ground Four, Miller alleges his appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to exclude evidence of "other crimes, wrongs or acts," also known as *Williams* rule[13] evidence. (Doc. 1 at 13–16; *see also* Doc. 11 at 28–30). The State filed pre-trial notices of intent to introduce evidence of other crimes, wrongs, or acts that Miller committed on January 15, 2015 and January 1–22, 2016, as relevant to prove his motive, intent, preparation, plan, or knowledge for the charged offenses. (*See* Docs. 7-7, 7-8; *see also* Doc. 7-11 at 47–48). With counsel's assistance, Miller filed a motion to exclude this evidence. (Doc. 7-10). On March 30, 2017, the trial court held a hearing, at which the State presented the victim's testimony. (Doc. 7-11). On April 4, 2017, the trial court orally denied Miller's motion and allowed the State to introduce evidence of Miller's 2015 conviction, including uncharged offenses subsumed into the aggravated stalking count and the incidents on January 15 and 22, 2016. (Doc. 18-1 at 5–6). In doing so, the trial court considered the victim's testimony at the hearing and at her deposition, along with counsel's arguments. (*See* Docs. 7-11, 7-12, 18-1). In his instant ineffective assistance of counsel claim, Miller seems to challenge the trial

[13] *Williams v. State*, 110 So. 2d 654, 663 (Fla. 1959) ("[E]vidence of any facts relevant to a material fact in issue except where the sole relevancy is character or propensity of the accused is admissible unless precluded by some specific exception or rule of exclusion.").

court's ruling only as to evidence of his 2015 conviction.[14] (Doc. 1 at 13–16; *see also* Doc. 11 at 28–30).

Miller presented this claim in ground one of his pro se amended petition alleging ineffective assistance of appellate counsel, which the First DCA denied "on the merits" without a written opinion. (*See* Doc. 7-32 at 9–15; Doc. 7-33). The First DCA's adjudication of the claim is entitled to AEDPA deference. As previously stated, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issues to raise on appeal. Further, contrary to Miller's argument, the trial court found that the State had proven the aggravated stalking charge in count one by clear and convincing evidence for the purpose of ruling on the *Williams* rule motion, regardless of the jury's ultimate conclusion as to count one. (Doc. 18-1 at 5; *see also* Doc. 7-11; Doc. 7-12 at 13–15, 19, 28, 50). Also, the trial court found that evidence of the January

[14] It does not appear that Miller's present claim is premised on the trial court's admission of evidence about the incidents on January 15 and 22, 2016, which the trial court found were "inextricably intertwined." (Doc. 18-1 at 5–6). In any event, "evidence which is inextricably intertwined with the crime charged[ ] is not *Williams* rule evidence." *Mills v. State*, 816 So. 2d 170, 171 (Fla. 3d DCA 2002) ("Evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not *Williams* rule evidence. It is admissible under [Florida Statutes,] section 90.402[,] because 'it is a relevant and inseparable part of the act which is in issue . . . [I]t is necessary to admit the evidence to adequately describe the deed.'" (citations omitted)); *Tumulty v. State*, 489 So. 2d 150, 153 (Fla. 4th DCA 1986) (stating that "'inseparable crime' evidence that explains or throws light upon the crime being prosecuted" is admissible under Fla. Stat. § 90.402 simply as relevant evidence because it allows the State "to present an orderly, intelligible case").

15, 2015 incident was "relevant and admissible" to show motive for the charged offenses, because Miller "had expressed anger and concern that the alleged victim in this case had caused his incarceration" for the January 15, 2015 incident. (Doc. 18-1 at 5; *see also* Doc. 7-11 at 17–18, 22–23, 25–28, 30–32, 34–36, 38–41, 44–46; Doc. 7-12 at 13–16, 28, 50[15]). Upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Miller's claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Therefore, Ground Four is denied.

### E. Ground Five

In Ground Five, Miller alleges his appellate counsel was ineffective for failing to challenge the trial court's denial of his counseled motion for severance of counts. (Doc. 1 at 17–19; *see also* Doc. 11 at 30–32). Miller's motion sought to sever the trial of counts one and two from the trial of counts three, four, and five.[16] (Doc. 7-9). The trial court denied the motion in open court on April 4,

---

[15] The victim's trial testimony substantiated her earlier statements. (*See* Doc. 7-14 at 333, 336–38, 341–43, 381, 385–86, 447).

[16] Count one (aggravated stalking) was based on January 1–22, 2016 events after a January 29, 2015 domestic violence injunction stemming from an incident on January 15, 2015; counts two (kidnapping) and three (sexual battery) were based on January 15, 2016 events; and counts four (kidnapping with a weapon), five (aggravated battery), and seven (tampering with a witness, victim, or informant) were based on January 22, 2016 events. (Doc. 7-1; Doc. 7-14 at 428).

2017, finding, as stated earlier, that the incidents on January 15 and 22, 2016 were "inextricably intertwined," and that the incident on January 15, 2015 was "relevant and admissible" because Miller "had expressed anger and concern that the alleged victim in this case had caused his incarceration" for the January 15, 2015 incident. (Doc. 18-1 at 5–6).

Miller presented this claim in ground two of his pro se amended petition alleging ineffective assistance of appellate counsel, which the First DCA denied "on the merits" without a written opinion. (*See* Doc. 7-32 at 16–20; Doc. 7-33). The First DCA's adjudication of the claim is entitled to AEDPA deference. As previously stated, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issues to raise on appeal.

Further, Miller has not shown that this claim would have had a reasonable probability of success on appeal. First, the joinder of the counts did not affect the jury's ability to differentiate the crimes, considering that the jury acquitted Miller of three of the six counts, including the aggravated stalking offense in count one. (Doc. 7-14 at 1137). In addition, the six counts were sufficiently connected to the January 2015 injunction and to one another to support the denial of the motion to sever. The January 22, 2016 offenses in counts four, five, and seven (armed kidnapping, aggravated battery, and tampering) were sufficiently connected to the January 15, 2016 offenses in counts two and three (kidnapping and sexual battery), as well as to the

January 1–22, 2016 offense in count one (aggravated stalking). The January 1–22, 2016 aggravated stalking charge stemmed from Miller's violation of the January 2015 domestic violence injunction. (*See id.* at 335–44, 445–54). The January 15, 2016 charges for kidnapping and sexual battery, which Miller wanted to sever, not only were based on events that occurred on the same day, but were intertwined with conduct charged in count one. (*See id.* at 330–33, 345–52, 403–04, 471–76, 497). Also, the January 15, 2016 charges for kidnapping and sexual battery gave context for the January 22, 2016 charges for armed kidnapping and aggravated battery. Essentially, the January 22, 2016 kidnapping and aggravated battery offenses seemed to be a culmination of Miller's week-long search for the victim after she had cooperated in the reporting of the January 15, 2016 crimes, which cooperation Miller told her to drop, threatening to kill her and her family if she did not. (*See id.* at 370, 373–89, 477–91, 496–97).

Thus, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Miller's claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Accordingly, Ground Five is denied.

### F. Ground Six

In Ground Six, Miller alleges his appellate counsel was ineffective for failing to challenge the trial court's denial of his motion to continue the hearing on Miller's pro se motion for nunc pro tunc competency determination to give Miller an opportunity to call favorable witnesses, namely, Dr. Bloomfield and Dr. Meadows. (Doc. 1 at 20–24; *see also* Doc. 11 at 32–34).

Miller presented this claim in ground five of his pro se amended petition alleging ineffective assistance of appellate counsel, which the First DCA denied "on the merits" without a written opinion. (*See* Doc. 7-32 at 30–36; Doc. 7-33). The First DCA's adjudication of the claim is entitled to AEDPA deference. Again, the Court gives considerable deference to appellate counsel's strategic decision of selecting the issues to raise on appeal.

Moreover, Miller has not shown that appellate counsel was deficient or that there was a reasonable probability that the outcome of the appeal would have been different but for counsel's allegedly deficient performance. To succeed on his claim that the trial abused its discretion in denying his motion for continuance, Miller was required to show: (1) "prior due diligence to obtain the witness[es]' presence"; (2) that "substantially favorable testimony would have been forthcoming"; (3) that "the witness[es] [were] available and willing to testify"; and (4) that "the denial of the continuance caused material

prejudice." *United States v. O'Neill,* 767 F.2d 780, 784 (11th Cir. 1985). Miller has not made these showings.

On January 2, 2018, Miller moved for a nunc pro tunc competency determination, which the trial court took under advisement until January 5, 2018. (Doc. 7-22 at 31). When Miller indicated he wanted to have Dr. Meadows and Dr. Bloomfield testify at the upcoming hearing, the trial court advised him that would be problematic because the witnesses were not under a subpoena. (*Id.* at 34–38). The trial court asked Miller about the witnesses' expected testimony and whether that testimony would be duplicative to their reports. (*Id.* at 36–37). Other than generalized statements, Miller was unable to identify anything that could not be introduced through the witnesses' reports. (*Id.*). At the end of the hearing, Miller conceded that he would only need Ms. Wright's testimony. (*Id.* at 39). However, on January 5, 2018, Miller stated that he still wanted to call Dr. Meadows and Dr. Bloomfield, but he needed a continuance to ensure their appearance. (Doc. 7-23 at 7). The trial court denied the request and stated it would rule on the nunc pro tunc motion based on the doctors' reports and Ms. Wright's testimony, assuming she were available to testify. (*Id.* at 7–8). After Ms. Wright's telephonic testimony that day, the trial court denied Miller's nunc pro tunc motion. (*Id.* at 14–20).

Based on the foregoing, Miller has not shown that the trial court abused its discretion to deny his request for a continuance. *See O'Neill,* 767 F.2d at

784. And appellate counsel cannot be ineffective for failing to bring a weak or meritless argument. *See Philmore*, 575 F.3d at 1264; *Owen*, 568 F.3d at 915. Therefore, upon thorough review of the record and the applicable law, the Court concludes that the state court's decision to deny Miller's claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). As such, Ground Six is denied.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition (Doc. 1) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment dismissing this action with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this Order, the Court denies a certificate of appealability.[17] Because the Court has determined that a certificate of

[17] The court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court denies a certificate of appealability.

appealability is not warranted, the Clerk of the Court shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of September, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-11
c:
Jamal A. Miller, #132314
Counsel of Record